# BRYANT v. DESERET NEWS PUB. CO.

No. 7556.   Decided June 19, 1951.   (233 P. 2d 355.)

See 17 C. J. S., Contracts, 327.  Guessing contests.  34 Am. Jur., Lotteries, sec. 12; 113 A. L. R. 1121.

*Wilford W. Kirton, Jr.,* Salt Lake City, for appellant.

*Ben E. Roberts,* Salt Lake City, for respondent.

WOLFE, Chief Justice.

This is an action for damages arising out of a contract. The case was tried without a jury upon a stipulation of facts and from a judgment for the defendant, plaintiff appeals.

The issue in this case is whether W. F. Bailey, grand prize winner of a new Plymouth sedan in the defendant Deseret News' "Giant Quarterback Contest," is or is not a member of the "immediate family" of his son, Frank D. Bailey, an employee of the defendant. The contest rules published by the defendant provided that the contest was open to "anyone except employees of the Deseret News and their immediate families." W. F. Bailey won the grand prize by correctly picking the score of the College of Pacific v. Utah football game played November 12, 1949. The plaintiff had the second closest score and would have won had Mr. Bailey been declared ineligible to compete under the rules of the contest. The parties have stipulated to the facts and agree that Frank D. Bailey is an employee of the defendant newspaper, that he is over 21 years of age, living with his wife and children in his own home, and was in no way dependent upon his father who lived separately and was not dependent upon the son.

Plaintiff contends that the words "immediate family", should be liberally construed where the defendant's intent in promulgating its rule was to secure the confidence of the subscribing public that the contest would be conducted in good faith and free from any opportunity for fixing or tampering. Plaintiff also invokes the rule of interpretation that doubtful, ambiguous terms in a contract should be interpreted against the party who has chosen the terms. 12 Am. Jur., Sections 250 and 252. We agree that these rules of construction should be considered in determining what is a reasonable and fair interpretation of the intention of the parties. However, if the language is clear and is not susceptible of more than one interpretation, the ordinary plain meaning of the words must be used.

In its broader sense, "family" means those descended from a common progenitor, a tribe, race or clan. In Webster's New International Dictionary, 2d Ed., the word "family" in its primary sense is defined

"as the body of persons who live in one house and under one head or manager; a household including parents, children and servants * * *."

In *Danielson* v. *Wilson,* 73 Ill. App. 287, affirmed *Norwegian Old People's Home Soc.* v. *Wilson,* 176 Ill. 94, 52 N. E. 41, a mutual benefit association created a fund for its members and their immediate families; held that a married daughter was a member of deceased's immediate family although she had not lived with him for five years prior to his death. In *Dalton* v. *Knights of Columbus,* 80 Conn. 212, 67 A. 510, a daughter over the age of 21, who had left home intending to make a living for herself, was held to be a member of her father's immediate family and therefore entitled to be his designated beneficiary.

In re *Bennett's Estate,* 134 Cal. 320, 66 P. 370, 371 quotes with approval a very early English case [*Rex* v. *Inhabitants of Darlington,* 4 Term R. 797] in which Lord Kenyon said,

"In common parlance the family consists of those who live under the same roof with the paterfamilias; those who form, if I may use the expression, his fireside. But when they branch out, and become the members of new establishments, they cease to be a part of the father's family."

This quotation has been used and approved in the following cases: *Dodge* v. *Boston & P. R. Corp.,* 154 Mass. 299, 28 N. E. 243, 13 L. R. A. 318; *People ex rel. Sagazei* v. *Sagazei,* 27 Misc. 727, 59 N. Y. S. 701; and *Italiana* v. *Nugnes,* 114 N. J. Eq. 185, 168 A. 589. These citations are enough to show that there are two views as to whether a child who leaves home and has his own family and household still belongs to his parent's family.

The cases cited above which hold that a child is a member of his parent's family even though married and living seprately involve insurance, where the general policy has been to give the words "immediate family" a liberal meaning so as to include the children, whom the ■ courts believe are the natural objects of their parent's bounty. Oftentimes if the child were not included as a member of the deceased's immediate family, no one would be entitled to the proceeds of the policy. In the instant case, the defendant extended an offer to the general public to participate in its contest. Employees were excluded in order to assure the participants that the contest would be as fair as possible. But it would have been impractical to exclude all the friends and relatives of the employees. If an employee who had access to the repository of the entry blanks desired to perpetrate fraud, there would be any number of persons whom he could choose as an accomplice and who would escape detection. Therefore, we cannot say that the rule was designed to exclude everyone with a possible opportunity for tampering through collusion with an employee. The words "immediate family" were meant to apply only to a very limited class.

Because a child may be considered a member of his parents' family, even though married and living separately, it does not follow conversely that a parent is a member of his son's family. Under Webster's definition, there appear to be two factors in the make-up of a family; one is a relationship, and the other is the physical fact of living together in one house under a head or manager. The latter element was what Lord Kenyon considered as controlling. When the child establishes his own household, the same blood tie exists, but a new status arises. The son is no longer a subordinate dependent of his father's, but becomes a new principal or paterfamilias of his own household. Thus, the establishment of a new household, plus marriage, creates a new family. The United States Census Bureau has de-

fined the word "family" in its Statistical Abstract, page 269, as

"a group of two or more persons related by blood, marriage, or adoption residing in the same household."

The insurance cases cited above do not hold that a parent is a member of his son's family after the son establishes a new household and acquires a "family of his own". Therefore we do not believe them to be controlling.

If the word "immediate" is to be given any meaning, it must be considered to have a restrictive effect upon the word "family". As used in the context of defendant's offer it is synonomous with "closest" or "nearest". Therefore giving these words their common everyday meaning, we find that W. F. Bailey, the father, was not a member of the immediate family of his son, Frank. The judgment is affirmed. Costs awarded to respondent.

LATIMER, McDONOUGH, and CROCKETT, JJ., concur.

WADE, J., concurs in the result.